Thank you, Your Honor. Good morning. May it please the Court. My name is Sam Helmy-Kabir. I'm the attorney for the appellants in this case, Marilyn Chinivasagam and Palamas Investments Incorporated. We are here today because of four rulings the District Court made against the appellants. The Paramount ruling on the pyramid of orders issued by the District Court was an order with regards to the motion for summary judgment pertaining to the PMPA claims, which was issued on July 13th, 2010. The issue before that Court and the issue before this Court is, was Equilon required to make a bona fide offer to sell its interest in the improvements and equipments located on the gas station when Marilyn Chinivasagam acquired possession of the premises through a new lease obtained by her corporation, Palamas. Let me just ask about that corporation. Why should we equate the two? Why should we conclude that there is no legal distinction between Chinivasagam, is that correct, and Palamas Investments? Chinivasagam was the franchisee, and because the franchise contract was personal to her, it does matter, doesn't it, that Palamas took possession of the premises, not your client. Understood, Your Honor. I think we need to have an understanding of what the intention and the legislative purpose of the PMPA was, and that was to, in essence, protect the franchisee, protect the franchisee's reasonable expectation that they should stay in business and earn a living. The act has to be liberally construed in favor of the franchisee because it protects, it's intended to protect and foster the franchisee. So, taken in the context, the franchisee's, correct, taken in that context, taken on the premise that the PMPA is to be liberally construed, you have to liberally construe that aspect of the PMPA, specifically speaking, under Section 2802 C4C that says the franchisee has to obtain a new lease in order to be... What's your authority? I'm still not sure you've answered the question. Maybe you're just giving the best possible argument that you can give, but is there any authority, is there any case or any regulation or statute or something that says it's okay for a separate corporation to be considered the franchisee? Your Honor, the cases are squarely against me as a district court pointed out, but you have to take it into the context of what the PMPA intended to achieve, and what it intended to achieve was to allow people to continue making a living, okay? The premise beyond the PMPA is you can't terminate and you can't non-renew a franchise. Why didn't she, as an individual franchisee, try to accomplish this? It was a business decision that she made, and at the time she thought it was a legitimate one, quite frankly. Well, but a lot of, there are a lot of business decisions that are made, but not all of them are good and not all of them are without risk. Understood, but applying the liberal premise that the PMPA, that the PMPA should be construed under, you have to give the benefit of the doubt to the court, and one of the reasons the court actually applied broadly the PMPA in favor of the franchisor instead of the franchisee is the court's assessment of whether the notice that was provided by Equan adhered with the strict requirements of the PMPA, and Equan actually gave notice, but it gave the wrong type of notice. Instead of providing a notice of termination, it provided a notice of non-renewal. Well, even your client admitted that she knew that this meant termination. It doesn't matter. It doesn't matter what she knew or what she admitted to. Well, non-renewal, an ordinary reasonable person would consider it termination. Understood, Your Honor, but under the strict rules of the PMPA with regards to the notice issue, it does make a difference whether it's non-renewed or a notice of termination, but that really goes to the issue that I'm trying to make is that the court applied broadly the PMPA in favor of the franchisor rather than broadly construing it in favor of the franchisee, which the PMPA was intended to protect. The court specifically read, wrote, although the letter speaks in terms of non-renewal rather than termination, it is clear that the letter provided notice that the defendant intended to end their franchise relationship on June 30th, 2009 rather than June 30th, 2010, the original end date of the franchise agreement. So applying that broad application in favor of the franchisee instead of, in favor of the franchisor instead of the franchisee is in total contrast to the legitimate purpose of the PMPA. Now going back to the issue of whether or not the franchisee was entitled to a bona fide offer because she acquired possession of the premises, we have to go back and look at the history of what happened. But you agree that your whole theory of that she acquired possession rises and falls on if we liberally construe her to be still the franchisee when it's a separate corporation. Well, you have to look at the facts of the case and I think the record speaks for itself. Well, looking at the record, looking at excerpt of record 856, Ms. Chinavasagam herself admitted that the notice indicated that the franchise would prematurely end June 30th, 2009. I mean, she was well aware of that and now you want to say, well, she made a business decision to let a corporation take over. No, Your Honor. The intent of presenting that argument to the court is to apprise the court of the fact that the district court broadly and liberally construed the PMP in favor of the franchisor instead of the franchisee. And it should be the other way around, okay? The benefit of the doubt should always go to the franchisee. So when you take that and you put it in the context of the facts of this case. The facts of which are a corporation assumed possession of the premises and she did not. I mean, if you talk about liberally construing, well, you have to look at the facts. The fact was the corporation took over. Well, let's look at how she acquired possession of the premises, okay? You mean originally? No, at the time she received the notice of termination and obtained a new lease through her corporation, okay? Equilon sends the notice of non-renewal, a defective notice under the PMP. Then they send a letter informing Ms. Chenowazigam that under the PMP, they are required to tender a bona fide offer, okay? And that's at 1086. Then they tender a bona fide offer, that's at 1088, for the improvements and equipments. Based on that, Ms. Chenowazigam, relying on that offer, decides to go out and obtain a lease, a brand new lease pursuant to 2802C4C to get- The offer was made, excuse me, Counsel, on the theory that she'd be in possession, and she never took possession. Yes, Your Honor. That is the theory, but looking at the facts and looking how Equilon acted in response to this, she did take possession of it. She herself and her corporation were legitimately in possession of that property and continued to run their business on that property as such. Free of charge, not paying for the equipment. Well, not necessarily, Your Honor. You have to take into consideration when the landlord paid, when the landlord entered into the lease, he was asking for a certain amount of rent to be paid. It is assumed that the improvements and equipments on the property are being compensated through the rent that is being paid. At the end of the day, we have to go back and we have to look at whether or not she did acquire possession of the property. Possession can be defined as occupancy and the exercise of domain over a property. With respects to real property, possession involves exclusive dominion and control, such as an owner of like property usually exercises. Now, you look at the facts of what happened here. She got a lease. She operated a station for a period after the underlying lease expired. She got a lease or her corporation got a lease? I apologize. The corporation got a lease through her. She was a signatory on the lease. There was no personal guarantee or anything to that effect. She signed the lease on behalf of her corporation. She kept Shell, I'm sorry, Equin at bay off her premises, did not allow them to come onto that property to take possession of the improvements and equipments. That to me shows she did acquire possession of the premises. Shell and Equin, in fact, had to go out of their way to gain access to the property because they weren't allowed on the property. They went and got court injunctions. They got court orders so that they could go onto the property and inspect the equipments because it was under the theory that Mission of Osagam and her corporation had acquired possession of the property. But Equin had a right to the property that your client withheld. Equin did not have a right to the property necessarily. They made a bona fide offer. Once they made that bona fide offer to sell off that improvements and equipments, Mission of Osagam had a right to dispute whether that offer met fair market value. And in fact, it didn't. Equin now- Mission of Osagam did? I mean, under what authority? Under the PMPA. Mission of Osagam had the authority- Or the corporation did. I mean, your argument is rising and falling on there being authority that somehow Mission of Osagam can be substituted somehow for her corporation. And I just, I'm just, this is your chance, but I'm not hearing anything that's persuading me that that's the case, other than the liberal interpretation. Is there anything else? Well, let's take it back into the context of when the bona fide offer was made. The bona fide offer was made before she acquired possession of the premises. Okay? Based on the fact that- Excuse me, she had possession at that time. Correct. But she didn't have possession. Afterwards, the corporation did. Correct. But our position is, since the PMPA under 2802C42, I'm sorry, C4C, is silent on the form in which the title can be taken, we think that a liberal construction would benefit the franchisee, and they should be offered the opportunity to continue running that business. This is a mom and pop operation. She goes to work every day. She's the one standing behind the counter. There is no difference between her and her corporation. And quite frankly, if you look at the context of how this lease worked, she replaced her corporation for Equilon. That's all she did. She's, there really is no difference between that. And I think when you apply the PMPA liberally in favor of the franchisee, which is something that the district court did not do, you can, you can assess that because the PMPA is silent on this issue, that she did acquire possession, and that she's entitled to receiving a bona fide offer pursuant to the PMPA. Did you want to reserve the balance for rebuttal? Sure, Your Honor. Okay. Thank you very much. I may please the court. My name is Robin Wofford of Wilson Turner Cosmo here on behalf of Equilon Enterprises. First, let me apologize for not being in here when Your Honors took the bench, but I think I follow my opposing counsel's arguments. Before I get started with my argument, I would like to ask this court to keep in mind two simple rules of law, and I think you clearly have them in mind from listening to the questions being asked. The first being that the plain meaning of the statute, the plain meaning must be given to the language of the statute. And the second rule, that there is a clear legal distinction between a corporation and an individual. And with those two rules in mind, I want to go to the first issue that's before this court, and that is whether the trial court properly ruled that Equilon did not have an obligation to offer, make a bona fide offer to Ms. Shina Fazagham. And we need to start with the words of the statute itself, because that's where your analysis needs to begin. And the PMPA defines what constitutes the acquiring of possession. It's very clear. There's no question about it. It says under 2802 C4C that the franchisee acquires possession of the leased marketing premises either through an assignment pursuant to subparagraph B, or by obtaining a new lease, or by purchasing the marketing premises from the landowner. What the appellants are asking this court to do is ignore the clear language of the statute and ignore that the franchisee did not do any of those things. It's undisputed that Marilyn Shina Fazagham did not accept the assignment of the lease. Marilyn Shina Fazagham did not enter into the option, and she did not purchase the property. But the main argument of opposing counsel is that she was a shareholder so she's still the franchisee as a shareholder of that corporation. Viewing the language, I guess, liberally, why isn't that enough considering this mom and pop organization and letting it go? Because that would be asking this court to throw out the rule of law that an individual shareholder does not own or possess the assets of the corporation, because that would ask this court to ignore the distinction that a franchise is personal to the franchisee. And Ms. Shina Fazagham admits she never once asked Equilon to assign this to Palamas. It's a personal of nature. I think if you go back to the Union Bank v. Anderson case, it's very instructive to where we sit here today. The Union Bank v. Anderson case involved individuals who elected to purchase the shares of the corporation that owned the land and not purchase the land because they wanted to maintain the federal water rights that were granted to the owner of the land. And if they would have purchased the land, as opposed to purchasing the shares, they wouldn't have been the landowner that had been granted those federal water rights. And the court said to those shareholders, when they tried to argue that they owned the land, that they possessed the land so they could use the anti-deficiency statute, the court said no, shareholders do not possess or own ownership in that land. That's exactly what Ms. Shina Fazagham is doing here. She elected, and we all know why she elected, to enter into the lease through a corporation so she could have the protection from the individual liability that goes with running an operation that has potential environmental contamination. She made that election. She lost her right to receive a bona fide offer under the PMPA. And if you look at the cases we've cited in our brief with regard to the PMPA recognizing that the franchise is an individual, is individually owned, is personal, it again supports our position. If you look at the case of Iannuzo v. Exxon, that's a situation where a husband and wife were operating a gas station. Who was the franchisee? The husband. The husband passed away. The wife owned the land on which that property, that gas station was operating. Ten months later after the husband died, the wife, Exxon, sent a notice of termination because the franchisee had passed away. The wife tried to challenge under the PMPA, your honors, and the court said she was not the franchisee, even though she owned the land and she had been operating the station. That's similar with the Williams v. BP Products North America case. The court found that the corporate plaintiff could not maintain a PMPA case because it was an individual who had entered into the franchise relationship, even though BP Products had been taking money from the corporation's bank account. That's still recognizing there was significant difference between an individual franchisee and she can't just pass it on to her corporation. So if this court continues to follow the clear letter of the law, the trial court was proper in granting. How about following the clear letter of the law on a notification of termination? Your honor, with regard to the notification of termination, the issue there is the law requires that the notice be specific enough for the franchisee to determine whether non-renewal or termination rests on lawful grounds. That's what this court found in Svelva v. Union Oil of California. And the court says you need to look at everything in looking at the sufficiency of the notice of termination, all of the facts known to the franchisee. And as your honor noted, this franchisee admitted she knew, she understood that that notice of non-renewal meant her lease was terminating early in 2009. Why do you use notice of non-renewal? It was a mistake, your honor. That's a simple fact. But it did not deny Ms. Shinova Zagim of her rights of understanding what, why the franchise was being terminated. And I actually found a case, and I should have cited it in our brief, but we found it afterwards. There was a case called Graber v. Mobile Oil at 614 F Supp 268, where similar facts occurred. Where there was a notice of non-renewal sent when the underlying lease was going to terminate. And it's a New Jersey case, and the court held that the use of the word non-renewal rather than termination did not violate the PMPA notice provisions because it contained, the notice contained all of the necessary information. Would you submit that case to your opposing counsel and to the court after argument? You bet, your honor. And I'm sorry we didn't have it in our papers. All right, I just have one question. Yes, your honor. It's a summary judgment motion. Weren't the damages for Equilon's conversion claim a triable issue of fact? Your honor, the damages were not a triable issue of fact for several reasons. First, the damages were established by accepting the plaintiff's valuation of the property, which was her, their expert said the valuation of the personal property was $325,000. Then, second, the evidence submitted to the court that was not disputed is that in the industry, in order to determine fair rental value, you apply a 10 to 12 percent valuation to the fair market value of the total equipment for an annual rental value. They did not dispute the 10 to 12 percent, and the court, we said, apply the lowest valuation, give us 10 percent, 10 percent on their fair market value, and that was the fair rental value for the property. Their arguments that they try to raise is that the court should have considered the rental value they were paying under the lease to the, Palamas was paying under the lease to the landlord as an offset, but the court clearly found, and rightfully so, if you look at the record, they were not paying anything to rent the equipment and improvements when they entered into the lease with the landlord. All right, thank you. Thank you, Your Honor. I can address the other claims, but I don't know that that's necessary at this point. Thank you, Your Honors. Thank you, Your Honors. Just to quickly address what the court had mentioned with regards to a tribal issue of material factors that pertain to the damages. In fact, um, the court did not weigh or did not entertain the offsets that Ms. Chinivasigan was entitled to for the rent that she paid to the landlord. Why would she be entitled to that? She was paying that to the landlord. Correct. She would be entitled to an offset of those damages. So the point being, quite frankly, Your Honor, is that there is a tribal issue of material fact with regards to the damages pertaining to that motion for summary judgment. What I'd like to go back once again and reiterate is that the PMPA is intended to protect the mom-and-pop franchisee, not the big oil franchisor. The property has been demolished. She's been run out of business because they failed to restrict language of the PMP with regards to the notice and because they tendered a bona fide offer and now they're saying, you know what, we never had to tender that offer in the first place. And as such, I think they've waived that argument. So there is a tribal issue of material fact as to whether or not the court was proper, the court's ruling was proper in broadly applying the intent and construing the PMPA for the franchisor rather than the franchisee. And with that, I'll submit on the briefing for the rest of the arguments. Thank you. Thank you, Your Honor. Thank you both for your arguments today. The case is submitted and we are adjourned for the day.
judges: Fletcher, Nelson, Murguia